UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
ABU KHALIQUZZAMAN,

                              Plaintiff,

           -against-

EQUIFAX INFORMATION SERVICES LLC &
DEPARTMENT STORES NATIONAL BANK,

                            Defendants.
----------------------------------------------------------------- x

MEMORANDUM & ORDER

17-cv-1450 (ENV) (JO)

VITALIANO, D.J.

On March 15, 2017, plaintiff Abu Khaliquzzaman launched this lawsuit against defendants Department Stores National Bank ("DSNB") and Equifax Information Services, LLC ("Equifax").[1] Dkt. No. 1. The complaint alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. DSNB has moved to compel arbitration and to stay these proceedings. Dkt. No. 19. Equifax has filed its own motion seeking a stay, Dkt. No. 19-4, which, apparently, plaintiff does not oppose. For reasons explained below, DSNB's and Equifax's motions are granted.

## Background[2]

Khaliquzzaman was issued a Macy's credit card through DSNB in April 2011, Dkt. No. 1 at 2, ¶s 8-9; No 19-2 at 2, ¶ 4, and soon thereafter, a credit card agreement, which provided,

---

[1] DSNB is a federally chartered bank headquartered in South Dakota. Dkt. No. 1 at 1, ¶ 4; Dkt. No. 19-2 at 1, ¶ 1. Equifax is a company whose principal place of business is in Georgia. Dkt. No. 1 at 1, ¶ 3.

[2] The facts, for purposes of these motions, are, for the most part, not in dispute, and are drawn from the complaint and supporting exhibits of the parties. Any disagreements as to facts are without import on the outcome of the motions.

among other things, that DSNB could amend or add terms, and that the agreement would be governed by "applicable federal law and [South Dakota] law." Dkt. No. 19-2 at 2-3, ¶s 8-9; Dkt. No. 19-3 at 1, ¶s 17, 20.

On April 5, 2015, DSNB sent Khaliquzzaman an account statement, which included a "Notice of Change in Terms and Right to Opt Out." Dkt. No. 19-2 at 3, ¶ 10. The notice identified specific changes and set forth a completely revised agreement. Newly included in the agreement was an arbitration provision. *Id.* at 2, ¶ 7. The notice informed Khaliquzzaman that the revised agreement would become effective as of August 6, 2015. He was expressly advised that he could opt out no later than August 21, 2015, by writing or calling DSNB. *Id.* at 3, ¶s 11, 13. Khaliquzzaman not only did not opt out by the date, *id.* at ¶ 12, he also continued to use the DSNB account after the revised agreement had become effective. *Id.* at ¶ 14; Dkt. No. 19-3 at 1.

In July 2016, Khaliquzzaman sent a letter to Equifax, to dispute the accuracy of information relating to his Macy's account as reflected in his Equifax credit file. Dkt. No. 1 at 2, ¶ 10. In September 2016, Equifax replied that the information was accurate. *Id.* at ¶s, 12-13. The challenged information showed that Khaliquzzaman's account balance was $11,130, well over his credit limit of $2,300, which seriously harmed his ability to obtain new credit. *Id.* at ¶s 15-16, 19. He contends that because of the inaccurate information, he was unable to finance a home purchase. *Id.* at 3-4, ¶s 27-28. He goes on to complain further that, in November 2016, because of Equifax's inaccurate reporting of his Macy's credit card information, Khaliquzzaman was caused to suffer a "medical incident." *Id.* at 3, ¶ 34. On March 15, 2017, this complaint was filed.

Standard of Review

Under the Federal Arbitration Act ("FAA"), a written provision in any contract agreeing

2

to arbitrate any controversy arising out of that contract "shall be valid, irrevocable, and enforceable," except for whatever legal or equitable remedy that could permit revocation of a contract. 9 U.S.C. § 2. Individual analysis, therefore, of "a motion to compel arbitration is limited to 'questions of arbitrability.'" *Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 36 (E.D.N.Y. 2017). More specifically, when considering the question of arbitrability under FAA, district courts must consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013). The threshold inquiry regarding contract formation is determined by reference to state law.[3] *Biggs v. Midland Credit Mgmt.*, 2018 WL 1225539, at *5 (E.D.N.Y. Mar. 9, 2018). Upon finding formation of a valid contract, the inquiry then turns to a focal analysis of arbitrability, which should be considered in light of case law holding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," and that arbitration clauses should be construed as broadly as possible. *Collins v. Aikman Prods. Co. v. Building Sys's., Inc.*, 58 F.3d 16, 19 (2d Cir. 2005).

From the perspective of processing it in a manner akin to summary judgment, where there are no genuine issues of material fact as to the existence of a valid agreement to arbitrate disputes, any question of arbitrability should be resolved against the non-moving party as a matter of law, and an order compelling arbitration entered. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012); *Shetiwy*, 959 F. Supp. at 473. In evaluating a motion to compel arbitration, any extrinsic evidence submitted by the parties as well as the allegations in the

---

[3] The parties do not contest the applicability of South Dakota law in resolving the motion to compel arbitration, including any issues regarding the formation of the agreement.

3

complaint may properly be considered. *See Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 548 n.1 (S.D.N.Y. 2011), *rev'd on other grounds and remanded*, 726 F.3d 290 (2d Cir. 2013). Of course, whatever the nature, form, or type of the record facts of evidence submitted on the motion to compel arbitration, they must be construed in the light most favorable to the non-moving party. *Schnabel*, 697 F.3d at 113.

Discussion

Khaliquzzaman opposes DSNB's motion to compel arbitration on two grounds. First, he contends that the agreement to arbitrate is missing an essential term – the effective date – and is therefore void under South Dakota law. Second, he argues that he cannot be bound by the revised agreement, because it was hidden in a bill statement, which did not, on its face, disclose that the statement contained a proposed contract.

With respect to the missing effective date, Khaliquzzaman points out that the notice of revision contained in the account statement sent by DSNB merely stated: "The following is a summary of certain changes that are being made to your Revolving Account terms. These changes will [take] effect on (the 'Effective Date')." Dkt. No. 19-5 at 5; *see also* Dkt. No. 19-3 at 7. He argues that the misstatement may evince a drafting error, but does not supply the missing effective date. DSNB's failure to expressly set forth an effective date in the revision language is fatal, he claims, under South Dakota law. Dkt. No. 19-5 at 9. He explains that, in the absence of an express effective date, the parties never agreed to an essential term of the revised agreement, making it unenforceable. Khaliquzzaman contends, additionally, that, under 12 CFR § 1026.9(c)(2)(iv)(A)(4) ("Regulation Z"), which has been incorporated into South Dakota law, the effective date <u>had</u> to be communicated to the party to be charged. Completing the logic of his argument, he asserts that in absence of a valid new contract, there was nothing to

opt out of, and that his failure to do so and his continued use of the Macy's card unconnected to a validly revised contract are irrelevant, *id.* at 14.

Viewing the record as a whole, however, it is clear that Khaliquzzaman's confusion regarding the notice he actually received stems from the fact that the motion exhibits relating to that notice, Dkt. No. 19-3, pgs. 2-14, are exemplars or templates of the notice he was sent. Dkt. 19-2 at 2-3. They are not exact reproductions of what he received in April 2015.[4] *Id.* at 2-3, ¶s 7 ("According to DSNB's records, attached as <u>Exhibit 1</u> is an exemplar copy[.]"), 10 ("Attached as <u>Exhibit</u> 2 is an exemplar of the "Notice of Change in Terms and Right to Opt Out[.]"). He seizes on the "effective date" language in the exemplar for his arguments. But, the declaration provided by DSNB avers, based on its business records, that what was actually mailed to Khaliquzzaman was the fully executed template that, did, in fact, set forth an effective date of August 6, 2015. Dkt. No. 19-2 at 13. Furthermore, to complete the establishment of notice, defendants note that South Dakota recognizes "a presumption of receipt when a mailing is properly sent through regular office procedures." *Clookey v. Citibank, N.A.*, 2015 WL 8484514, at *3 (N.D.N.Y. Dec. 9, 2015).

Buttressing its evidence, DSNB submitted, as noted earlier, a declaration noting that the Notice of Change of Terms was sent to plaintiff on or about April 5, 2015, and that the terms relevant to Khaliquzzaman would have fit into the template. Dkt. No. 19-2 at 3, ¶ 10. Khaliquzzaman merely responds that he has "no recollection of ever seeing a revised credit card

---

[4] The use of an exemplar, as opposed to the actual document, is accepted practice in this Circuit. *See, e.g., Carr v. Citibank, N.A.*, 2015 WL 9598797, at *2, 2 n.20 (S.D.N.Y. Dec. 23, 2015).

5

agreement sent by DSNB." Dkt. No. 19-6 at 2, ¶ 8.[5] What he does not say, however, is telling. Khaliquzzaman does not dispute that that a change of terms document was sent to him; that he received the document; and that the document that he received actually contained an opt-out date of August 6, 2015. It is most evident, therefore, in viewing the evidence in the light most favorable to plaintiff, that there is no genuine issue of fact regarding the validity and applicability of the revised agreement, including its terms compelling the arbitration of related disputes.

In any event, Khaliquzzaman's undisputed use of the credit card after the undisputed opt out date of which he admits he received notice, is fatal to his argument against arbitration. Under South Dakota law, any "use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer[.]" SDCL § 54-11-9; *see also McCormick v. Citibank, NA*, 2016 WL 107911, at *4 (W.D.N.Y. Jan. 8, 2016) (citing § 54-11-9); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *4 (W.D. Wash. Mar. 22, 2013) (collecting similar cases). As such, he agreed to the amended terms contained in the April 2015 agreement. *Thomas v. Midland Credit Mgmt., Inc.*, 2017 WL 5714722, at *10 (E.D.N.Y. Nov. 27, 2017).

Khaliquzzaman gamely moves on to argue, essentially, that he could not be expected to inspect a bill statement for a notice of terms change.[6] He says that it is his "general practice not to read an entire credit card bill." Dkt. No. 19-6 at 2, ¶ 9. As a practical matter, his argument reflects a sad reality as to the manner in which many address their usual business affairs – it is

---

[5] Especially given an alternative path to decision, there is no need to consider the absent effective date argument either. The court observes that there is case law lending support to the idea that the date of the opt-out provision could supply the effective date of the arbitration provision. *See Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894-95 (S.D. 2006).

[6] To the extent Khaliquzzaman seeks to rely on cases dealing with electronic notice, those cases are inapposite here, where the document in question was physically sent to him rather than electronically transmitted.

not unusual for people to minimally read through a bill statement. As a legal matter, however, courts have upheld the use of so-called "bill stuffer" amendments, including those courts construing South Dakota law. *See, e.g., Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d 197, 207 (D.D.C. 2017); *Coppock*, 2013 WL 1192632, at *4 (applying South Dakota law); *Guerrero v. Equifax Credit Info. Servs., Inc.*, 2012 WL 7683512, at *4-*5 (C.D. Cal. Feb. 24, 2012).

Having determined that Khaliquzzaman and DSNB had validly entered into the revised credit card agreement that contained an arbitration term, the question of the arbitrability of the dispute under the terms of the arbitration provision is brought up for review. The relevant clause is broad, covering "any claim, dispute, or controversy" that arises out of, or is related to, Khaliquzzaman's account. Dkt. No. 19-3 at 13. His claim against DSNB relates to the reporting of credit information, which is related to his DSNB credit account. As such, it is crystal clear that it squarely falls within the scope of the arbitration agreement. *In re American Exp. Financial Advisors Securities Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *Carr*, 2015 WL 9598797, at *3 ("[E]ven claims that merely 'implicate' parties rights and obligations under an agreement are subject to arbitration.").

Finally, there is the question of a stay, requested separately by both DSNB and Equifax. Under FAA, provided that certain conditions are met, a district court will ordinarily stay proceedings while arbitration is pending. *Katz v. Celico Partnership*, 794 F.3d 341, 345-46 (2d Cir. 2015). Specifically, where a party requests a stay and all claims in a matter are proceeding to arbitration, the Second Circuit has determined that FAA "mandate[s] a stay of proceedings." *Id.* at 347. Here, where one claim is proceeding to arbitration, and the other is not, a stay of the nonarbitrable claim against another party is not mandated. But, given the factual overlap

7

between the claims against Equifax and those against DSNB headed to arbitration, makes a discretionary stay of the Equifax action all the more appropriate. *Winter Investors, LLC v. Panzer*, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015). This is especially so here since Khaliquzzaman did not oppose Equifax's request for a stay in the first place. A stay of all proceedings, then, will be ordered.

## Conclusion

For the foregoing reasons, the motion of defendant DSNB to compel arbitration is granted, and arbitration of plaintiff's claims against it is ordered. The respective motions of DSNB and Equifax for a stay are granted, and all proceedings are ordered stayed until further order of the Court.

So Ordered.

Dated: Brooklyn, New York
July 30, 2018

/s/ Hon. Eric. N. Vitaliano, U.S.D.J.
_____
ERIC N. VITALIANO
United States District Judge